# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Jeannie Ann Anderson, )<br>)<br>     Plaintiff, )<br>)<br>v. )<br>)<br>Andrew M. Saul, )<br>Commissioner of the )<br>Social Security Administration, )<br>)<br>     Defendant. )<br>_____ ) | C/A No. 1:19-cv-03007-MBS<br><br>**OPINION AND ORDER** |

On October 23, 2019, Plaintiff Jeannie Ann Anderson ("Plaintiff") filed the within action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of a final decision of Defendant Commissioner of Social Security (the "Commissioner") denying her claim for Supplemental Security Income Benefits ("SSI").

## BACKGROUND

Plaintiff first filed her SSI application on March 10, 2016, alleging disability beginning February 9, 2016, when she slipped and fell from a step. Plaintiff's application was denied initially and again upon reconsideration. A hearing was held before an Administrative Law Judge ("ALJ") on June 7, 2018. The ALJ issued her decision on September 19, 2018. She determined that Plaintiff had severe impairments of "status post right ankle open reduction internal fixation surgery due to a fracture tibia and fibula, chondromalacia of [] right knee with arthritis, fibromyalgia and a combination of dermatitis and eczema." Tr. 24. However, she further determined that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [Plaintiff's] symptoms [were] not entirely consistent with the medical evidence and other evidence in

the record . . . ." *Id.* Thus, the ALJ concluded that Plaintiff was not under a disability within the meaning of the Social Security Act. Plaintiff filed a request for review of the ALJ's decision, which the Appeals Council denied on August 19, 2019, making the ALJ's decision the "final decision" of the Commissioner.

On May 15, 2020, Plaintiff filed her brief challenging the ALJ's decision on the basis that the ALJ's assessment of Plaintiff's residual functional capacity ("RFC") is not supported by substantial evidence. Plaintiff contends specifically that the ALJ's assessments of her treating orthopedist's opinions and of her subjective complaints are neither supported by substantial evidence nor based on the proper legal framework. ECF No. 13. The Commissioner filed his response to Plaintiff's brief on June 23, 2020. ECF No. 14.

In accordance with 28 U.S.C. § 636(b) and Local Rule 73.02 (D.S.C.), this matter was referred to United States Magistrate Judge Shiva V. Hodges for a Report and Recommendation ("Report"). On August 20, 2020, the Magistrate Judge filed her Report recommending that the court affirm the Commissioner's decision to deny benefits. ECF No. 17. The Magistrate Judge found that the ALJ's allocation of partial weight to Plaintiff's treating orthopedist's opinion was supported by substantial evidence, ECF No. 17 at 47-49, and that the ALJ "explicitly considered Plaintiff's subjective allegations and the objective evidence in accordance" with the appropriate regulations, *id.* at 52-56. Plaintiff filed objections to the Report on September 2, 2020, ECF No. 18, to which the Commissioner responded, ECF No. 19.

This matter is now before the court for review of the Magistrate Judge's Report. The court is charged with making a *de novo* determination of any portions of the

Report to which a specific objection is made.  The court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or may recommit the matter to the Magistrate Judge with instructions. 28. U.S.C. § 636(b).

## STANDARD OF REVIEW

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one. Section 205(g) of the Act provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g).  "Substantial evidence has been defined innumerable times as more than a scintilla, but less than a preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964).  This standard precludes a *de novo* review of the factual circumstances that substitutes the court's findings for those of the Commissioner.  *Vitek v. Finch*, 438 F.2d 1157 (4th Cir. 1971).  The court must uphold the Commissioner's decision as long as it is supported by substantial evidence.  *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).  "From this it does not follow, however, that the findings of the administrative agency are to be mechanically accepted.  The statutorily granted right of review contemplates more than uncritical rubber stamping of the administrative action." *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969).  "[T]he courts must not abdicate their responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner's] findings, and that his conclusion is rational." *Vitek*, 438 F.2d at 1157-58.

The Commissioner's findings of fact are not binding if they were based upon the application of an improper legal standard. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir.

3

1987).  However, the Commissioner's denial of benefits shall be reversed only if no reasonable mind could accept the record as adequate to support that determination.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

## APPLICABLE LAW

Under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-83(c), SSI benefits are available to an individual who is financially eligible, files an application for SSI, and is disabled as defined in the Act.  42 U.S.C. § 1382.  An individual is determined to be under a disability only if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).  The disabling impairment must last, or be expected to last, for at least twelve consecutive months. *See Barnhart v. Walton*, 535 U.S. 212, 214-15 (2002).

The Commissioner has developed the following five-step evaluation process for determining whether a claimant is disabled under the Act: (1) whether the claimant engaged in substantial gainful activity; (2) whether the claimant has a severe medically determinable impairment; (3) whether the impairment meets or equals the severity of an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) whether the impairment prevents the claimant from performing past relevant work; and (5) whether the impairment prevents the claimant from participating in substantial gainful employment.  20 C.F.R. § 416.920(a)(4)(i)-(v). Through the fourth step, the burden of production and proof is on the claimant. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).  At step five, the burden shifts to the

Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience. *Id.* If at any step of the evaluation the ALJ finds that the individual is disabled or not disabled, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

## DISCUSSION

Plaintiff was born in 1970 and was 45 years old as of her alleged disability onset date. Tr. 27. She has a high school education and past relevant work experience as a housekeeper, babysitter, stocker at Walmart, and school cafeteria helper. Tr. 47-51. Plaintiff alleges disability related to when she slipped and fell from a step, which accident ultimately resulted in surgery described as "open reduction and internal fixation of the right posterior malleolus, and right tibia." ECF No. 13 at 3 (citing Tr. 412-414). She further alleges disability due to issues related to the initial fall, including discomfort in her right knee and additional falls. *Id.* at 8.

Plaintiff testified that since her initial fall, she has been unable to stand or stoop for long periods of time; she experiences pain in her knee and pain, stiffness, and swelling in her ankle; and she needs to elevate her leg for approximately five hours throughout the day and she takes pain medication. ECF No. 13 at 9 (citing Tr. 52, 57). In addition to the pain caused by the initial fall, Plaintiff suffers from migraines and allergies. *Id.*

The ALJ found that Plaintiff had not engaged in substantial gainful activity since March 10, 2016, the date of Plaintiff's application. The ALJ found that Plaintiff suffers from severe impairments of "status post right ankle open reduction internal fixation

5

surgery due to a fracture tibia and fibula, chondromalacia of her right knee with arthritis, fibromyalgia and a combination of dermatitis and eczema"; but found that Plaintiff does not suffer from an impairment or combination of impairments that meets or equals the severity of one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. With respect to RFC, the ALJ determined that Plaintiff has the capacity to perform sedentary work as defined in 20 C.F.R. § 416.967(a), with certain exceptions; and, considering Plaintiff's age, education, work experience, and RFC, a significant number of jobs exist in the national economy that Plaintiff can perform. Tr. 20-28. Accordingly, the ALJ determined that Plaintiff is not disabled.

    A. <u>Objection One: Treatment of Physicians' Opinions</u>

Plaintiff argues that the ALJ should have allocated controlling weight to the opinion rendered by T. Chris Tran, M.D., Plaintiff's treating orthopedist, and erred by allocating partial weight to Supen Patel, M.D., a rheumatologist who treated Plaintiff for fibromyalgia and joint pain. Plaintiff objects that the Magistrate Judge's finding in support of the ALJ's allocation of weight is not supported by substantial evidence. ECF No. 18 at 2-4. The Commissioner relies on the arguments raised in his response brief. *See* ECF No. 19.

Pursuant to 20 C.F.R. § 416.927(c), the Commissioner will evaluate every medical opinion received and will accord greater weight to the opinion of treating medical sources because treating physicians are best able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. However, the opinions of treating physicians are not necessarily entitled to controlling weight. *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992). "[I]f a physician's opinion is not supported by clinical evidence

or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). Additionally, a treating physician's opinion is not entitled to controlling weight where the opinion lists diagnoses but fails to explain how such conditions affect the claimant's work-related abilities. *Dydra v. Colvin*, 47 F. Supp. 3d 318, 324 (M.D.N.C. 2014) (citing *Thompson v. Astrue*, 442 Fed. Appx. 804, 808 (4th Cir. 2011)). *See* SSR 96-2p, 1996 WL 374188, at *5 (Jul. 2, 1996) ("[e]ven if a treating source's medical opinion is well-supported, controlling weight may not be given to the opinion unless it also is 'not inconsistent' with the other substantial evidence in the case record"). Where the ALJ declines to give controlling weight to a treating opinion, the regulations require that he or she apply the following factors: (1) length of the treatment relationship and frequency of examination; (2) nature and extent of the treatment relationship; (3) the degree to which the medical evidence in the record supports the physician's opinion; (4) the consistency of the opinion with the record as a whole; and (5) the specialization of the treating physician. 20 C.F.R. § 416.927(c).

      The record reflects that Dr. Tran produced three opinions. In the first, a certification for medical leave dated April 7, 2016, he opined that Plaintiff was unable to work due to a fractured right leg and the consequential surgery and that she would be unable to work for twelve months as a result of the injury. Tr. 461. In the second opinion, a physical RFC assessment dated July 18, 2016, Dr. Tran opined that Plaintiff's right leg injury prevented her from standing for six to eight hours and necessitated her lying down to so as to "elevate[] leg due to pain and swelling," but noted that the impairment was not expected to last one year or longer. Tr. 506. As of this date, Dr.

7

Tran opined that Plaintiff's impairment prevented her from regularly lifting more than five pounds, from lifting, pulling, and holding objects, and from bending, squatting, kneeling, and turning part of her body. *Id.* at 507-508. Dr. Tran opined that Plaintiff could not resume her current or previous employment at that time but specified that he expected her disability to be temporary in nature and that Plaintiff would be capable of returning to work within twelve months. *Id.* at 509. Finally, Dr. Tran authored a medical source statement, dated May 25, 2018, in which he opined that as a result of Plaintiff's fractured leg and the resultant stiffness, swelling, and pain, she would need to lie down for periods of time throughout the day and that she could not be expected to carry ten pounds even occasionally, sit for longer than 90 minutes during the day, or stand for longer than fifteen minutes during the day. Tr. 766. Dr. Tran wrote that Plaintiff could never crouch or climb and could only occasionally twist and stoop and could not push or pull. *Id.* at 767. Dr. Tran noted that Plaintiff's impairment would cause her to be absent from work more than four days a month and off task 25 percent or more. *Id.* He expected Plaintiff's impairment to last at least twelve months. *Id.* at 768.

Dr. Patel completed a physical medical source statement dated May 16, 2018. He opined that Plaintiff was limited as follows: could walk four to five city blocks "without rest or severe pain"; could sit for more than two hours at one time; could stand for 45 minutes before needing to change positions; and could stand and/or walk for about four hours during an eight-hour day and sit for at least six hours during an eight-hour day. Tr. 761. Dr. Patel also opined that Plaintiff would not require a job that permits her to shift positions at will from sitting, standing, and walking, would not require a job that permits her to walk around during an eight-hour day, and would not require a job that permits her

8

to take unscheduled breaks during the work day. *Id.* Dr. Patel further opined that Plaintiff did not need to elevate her leg during prolonged periods of sitting and did not require a cane or other assistive device to stand or walk. Tr. 762. Dr. Patel found that Plaintiff could frequently lift and carry up to 20 pounds and occasionally carry up to 50 pounds; could frequently twist and stoop and climb stairs, occasionally crouch and squat, and occasionally climb ladders; and had no limitations with using her hands and fingers and reaching overhead. *Id.* Dr. Patel opined that Plaintiff would likely be off task ten percent of the work day and could tolerate moderate work stress. He found Plaintiff's impairments would likely produce "good days" and "bad days" and that Plaintiff would likely be absent from work about one day a month as a result of her impairments. *Id.*

The ALJ first reviewed Plaintiff's medical record, and concluded in relevant part as follows:

> Regarding the claimant's right knee impairments, the record indicates the claimant complained of fracturing her right leg in February 2016 with another fall in June 2016, along with complaints of pain, stiffness, popping, swelling and weakness (Exhibits 5F/1; 6F/15, 31; 9F/2, 5; 10F/2; 11F/1; 14F/1; 17F/1-3; 18F/4; 21F/1, 3-4; 24F/13; 27F/2; 31F/6; 35F/24; 38F/1-4). However, despite these complaints, examinations generally showed full range of motion bilaterally, normal capillary refill, no edema, normal motor function, normal sensation and a normal gait. There were also less optimal findings, including limited range of motion, tenderness, bruising, decreased strength, joint effusion, limited squatting, slow rising from chair and exam table, chondromalacia of the medial femoral condyle, retropatellar scar tissue with adhesions, crepitus and an abnormal gait (Exhibits 4F/3; 6F/32; 7F/4; 11F/2; 14F/1-3; 15F/4; 17F/1-3; 18F/4-5; 21F/4-7; 24F/12; 27F/4; 29F/4; 31F/3, 6-7; 36F/4; 38F/1-4; 39F/10). Diagnostic imaging also corroborated the examination findings, revealing a distal third tibia shaft with the associate a comminuted femur fractures with later imagine revealing intact hardware with a healing fracture. However, by October 2017, she was noted with mild to moderate chronic appearing lateral patellar subluxation with lateral patellar tilt and a small underlying knee joint effusion, along with a moderate amount of bone marrow edema along the posteromedial aspect of the non-weight-bearing surface of the medial femoral condyle (Exhibits 6F/23-24, 36; 9F/1, 5-6,

8-10; 14F/2; 17F/2-3; 27F/4, 7; 31F/3, 11; 38F/8; 39F/4-5). The claimant was prescribed medications as a result of these conditions, including Mobic and Tramadol (Exhibits 16E; 18E; 31F/5; 35F/6; 38F/3). The claimant also tried alternative treatments, including open reduction internal fixation surgical repair in February 2016 with right knee arthroscopy with chondroplasty in November 2016 with a walker and a walking boot used during recovery from surgery and a cane, a knee brace, physical therapy and ongoing use of injections noted after that (Exhibits 6F/26-30; 9F/1; 10F; 14F/1-3; 17F/2; 18F/1-4; 20F/3; 21F/1; 23F/1; 24F/1, 9; 31F/4; 38F/1-5; 41F/1-2).

Tr. 24. The ALJ then discussed Dr. Tran's opinions. She afforded partial weight to those opinions and explained her decision as follows:

> Dr. Tran's source statements have generally limited the claimant's ability to stand and walk for eight hours and also noted limitations with bending, squatting, and kneeling. However, his findings have also changed over time with him. Initially, he indicated the claimant's injury would affect her for less than a year, but later claimed it would limit her for more than a year. He also initially limited her to only lifting five pounds, but his later statements indicated she could lift ten pounds. Similarly, he reported that she would need to lay down during the day to elevate her leg with no explanation as to why this would even require her to lay down. In addition, he limited her reaching to frequent with no explanation as to why her knee injury would limit her ability to reach. Of note, Dr. Tran's conclusions are inconsistent with the claimant's rheumatologist, who noted the claimant had far greater lifting abilities, required no elevation of her legs and noted no reaching limitations (Exhibit 40F/2-3). Finally, the claimant's more recent treatment notes indicated the claimant still had mild tenderness and trace effusion and mild crepitus, but also noted no instability, good range of motion and neutral alignment with normal sensation, motor function and normal imagine, supporting some ongoing difficulties, but generally showing improved functioning, despite some ongoing injection treatment (Exhibits 31F/3; 38F/2, 4-5, 8).

Tr. 25-26. The ALJ then explained her allocation of partial weight to Dr. Patel's opinion:

> Dr. Patel noted evidence of right knee pain and diffuse muscle pain with joint tenderness that would limit the claimant to walking five blocks, standing and walking for about four hours and sitting for about six hours in an eight-hour day. In addition, Dr. Patel noted the claimant was capable of lifting twenty pounds frequently and as not requiring any handheld device for ambulation. His findings show far greater abilities than Dr. Tran and in many ways would appear to overstate the claimant's abilities with evidence of ongoing knee injections for treatment of her right knee

>   chondromalacia and ongoing tenderness and swelling (Exhibits 31F/3; 38F/2-5).

Tr. 26.  The ALJ noted she afforded little weight to the opinion expressed by Marion McFarland, M.D., who found the claimant should elevate her legs above her heart to reduce swelling.  *Id.*  The ALJ explained:

>   [t]his recommendation was after the claimant fell on her surgically repaired leg and was noted with light swelling and that she could have a ligament injury and to follow up with Dr. Tran for evaluation (Exhibit 27F/2-4). There is no evidence to support that this recommendation was meant as a long-term treatment option with more recent treatment notes indicating no instability, good range of motion and neutral alignment with normal sensation, motor function and normal imaging (Exhibits 31F/3; 38F/2, 4).

Tr. 26.  Finally, the ALJ stated she allocated partial to little weight to the "state physical consultant at the reconsideration determination who opined the claimant could engage in less than light exertion work (Exhibit 5A)."  Tr. 25.  The ALJ explained that the state consultant "properly noted the claimant had difficulties with her right leg, but failed to consider her fibromyalgia and skin conditions," and that "they were unable to consider the more recent treatment notes indicating the claimant was still using a brace and getting injections for her knee, which would support limiting her to less than sedentary work."  Tr. 25.

On review, the Magistrate Judge found that the ALJ properly explained her reasons for affording partial weight to Dr. Tran's opinion and partial weight to the opinion provided by Dr. Patel.  The Magistrate Judge disagreed with Plaintiff's assertion that the ALJ had credited Dr. Patel's opinion over Dr. Tran's opinion and rather found that the ALJ had afforded both opinions partial weight and that such allocation of weight was supported by substantial evidence.  ECF No. 17 at 46-48 ("Because a medical

11

opinion may only carry controlling weight if it is not inconsistent with the other substantial evidence of record and Plaintiff's only treating physicians to offer opinions provided vastly different impressions of her functional abilities, the ALJ appropriately declined to accord controlling weight to either opinion"). The court agrees with the Magistrate Judge's findings and recommendation. It is clear from the record that the ALJ considered each medical opinion in relation to the medical evidence, including treatment notes, and allocated weight accordingly.[1]

      B.      Objection Two: Subjective Complaints

Plaintiff objects to the Magistrate Judge's finding that the ALJ adequately considered her subjective symptoms and complaints. ECF No. 18 at 4. Plaintiff argues the ALJ "cherrypick[ed]" medical notes to support her conclusion of no disability and contends the Magistrate Judge merely summarized the ALJ's findings. *Id.* at 6. The Commissioner again relies on the arguments raised in his response brief. *See* ECF No. 19.

Under the governing regulations, "the determination of whether a person is disabled by pain or other symptoms is a two-step process." *Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996). *See* 20 C.F.R. § 416.929. The first step requires a finding of objective medical evidence showing "the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could

---

[1] The Magistrate Judge acknowledged that the ALJ did not specifically mention Dr. Tran's specialization as an orthopedic surgeon, which is one of the relevant factors in 20 C.F.R. § 416.927(c), but noted that courts in this District do not require express discussion of each factor, *see Hendrix v. Astrue*, No. 09-01283-HFF, 2010 WL 3448624, at *2-3 (D.S.C. Sept. 1, 2010), and the Fourth Circuit has not held otherwise, *see Burch v. Apfel*, 9 Fed. Appx. 255, 259 (4th Cir. 2001).

reasonably be expected to produce the pain or other symptoms alleged." *Id.* After a claimant has met this threshold showing, the ALJ must evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work." *Id.* at 595. "The second determination requires the ALJ to assess the credibility of the claimant's statements about symptoms and their functional effects." *Lewis v. Berryhill*, 858 F.3d 858, 866 (4th Cir. 2017). The Fourth Circuit has provided the following guidance:

> [T]his evaluation must take into account not only the claimant's statements about her pain but also "all the available evidence," including the claimant's medical history, medical signs, and laboratory findings . . . ; any objective medical evidence of pain . . . and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it . . . .

*Craig*, 76 F.3d at 594; *see* 20 C.F.R. § 416.929(c).

The ALJ summarized Plaintiff's hearing testimony as follows:

> the claimant testified that [sic] could no longer work due to her right knee, severe dermatitis and fibromyalgia. She testified that she broke the tibia and fibula in her right leg after falling from steps and had surgery to repair them that required rods and screws. She testified that since that time, she has had a second surgery, but her knee pops, swells, and she has constant pain in her leg. She testified that she has tried injections, braces and medication, which have helped, but not relieved her leg pain. The claimant testified that she must still elevate her legs for about five hours per day, to relieve her swelling and was limited to standing and walking for forty-five minutes with her using a cane when she expected to walk for longer periods. She testified that she was limited to sitting for no more than an hour and that she could lift and carry about ten pounds . . . .

Tr. 23-24. Contrary to Plaintiff's objection, the ALJ thereafter engaged in a thorough review of the medical record and concluded that Plaintiff's allegations were partially consistent with the evidence. Tr. 24-26. On that basis, the ALJ assigned to Plaintiff an RFC that specified restricted sedentary work. Tr. 23. The court notes that

Plaintiff does not cite to specific evidence that she contends the ALJ failed to consider. *See* ECF No. 18 at 5-6.

The court agrees with the Magistrate Judge's finding that the ALJ's treatment of Plaintiff's subjective complaints is supported by substantial evidence. *See Craig*, 76 F.3d at 595 ("Although a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence . . . .").

## CONCLUSION

For the reasons stated herein, the court agrees with and adopts the Report and Recommendation, ECF No. 17, and incorporates it herein by reference. The Commissioner's final decision of no disability is **AFFIRMED**.

**IT IS SO ORDERED.**

s/Margaret B. Seymour
Margaret B. Seymour
Senior United States District Judge

February 23, 2021
Charleston, South Carolina